# IN THE UNITED STATES DISTRICT COURT
# FOR THE SOUTHERN DISTRICT OF ALABAMA
# SOUTHERN DIVISION

| | |
|---|---|
| CHRISTOPHER D. CRAIGHEAD, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) CIVIL ACTION 17-0445-WS-MU |
| | ) |
| AUSTAL USA, LLC, *et al.*, | ) |
| | ) |
| Defendants. | ) |

## ORDER

This matter comes before the Court on defendant Ameri-Force Craft Services, Inc.'s Motion to Dismiss (doc. 11). The Motion has been briefed and is now ripe for disposition.[1] Also pending is defendant Austal USA, LLC's derivative Motion for Judgment on the Pleadings (doc. 25), which has also been briefed.

**I.     Background.**

Plaintiff, Christopher D. Craighead, brought this sexual harassment / retaliation action against defendants, Austal USA, LLC and Ameri-Force Craft Services, Inc.[2]

---

[1] Rather than filing an amended complaint to cure the purported pleading deficiencies enumerated in the Motion to Dismiss, plaintiff elected to file a Response (doc. 26) in opposition to the Motion. In that filing, plaintiff repeatedly offered to replead any aspect of the Complaint deemed inadequate. (*See* doc. 26, at 1 ("the appropriate relief is under Rule 12(e) where Plaintiff Craighead would file an Amended Complaint"), 9 ("if the Court believes additional factual allegations are needed to meet Rule 8's requirements, Plaintiff respectfully requests that he be allowed the opportunity to amend his complaint"), 10 (similar), 14 (similar).)

[2] The Complaint also purports to list as defendants "Fictitious Defendants A, B, C, D, E, and F," who are identified only as "those persons, firms, corporations or other entities whose wrongful conduct caused or contributed to cause the damage to the Plaintiff." (Doc. 1, ¶ 6.) "Fictitious-party pleading is generally not permitted in federal court, absent certain circumstances that are not present here." *Kirksey v. Schindler Elevator Corp.*, 2016 WL 3189242, *1 n.3 (S.D. Ala. June 7, 2016); *see also Weiland v. Palm Beach County Sheriff's Office,* 792 F.3d 1313, 1318 n.4 (11th Cir. 2015) ("As a general matter, fictitious-party pleading is not permitted in federal court.") (citation omitted); *John Hancock Life Ins. Co. (USA) v. Andrews*, 2015 WL 8346965, *1 n.1 (N.D. Ga. Dec. 8, 2015) (acknowledging exception where
(Continued)

In relevant part, the Complaint sets forth the following well-pleaded factual allegations (all of which are taken as true for purposes of the pending Motions): Ameri-Force, an employee staffing company, placed Craighead in an electrician/fiber technician position with Austal in June 2015. (Doc. 1, ¶¶ 5, 11.) While at Austal, Craighead was transferred to the crew of Austal supervisor Brian Fore in February 2016. (*Id.*, ¶ 15.) Immediately thereafter, Fore initiated a campaign of "sexual harassment and hostility" directed toward Craighead. (*Id.*, ¶ 17.) Such harassment was manifested in the form of "hostile and sexually explicit text messages and pictures" that Fore sent to Craighead, as well as sexually explicit comments (including comments about oral sex, Craighead's sexual orientation and male genitalia) directed at Craighead. (*Id.*, ¶ 19.) On March 21, 2016, Craighead spoke with Austal supervisor Richard Tally to request a transfer away from Fore's supervision (without identifying any alleged harassment); however, Tally simply instructed Craighead to speak with Fore directly, after which Fore's harassing conduct worsened. (*Id.*, ¶ 21.) On March 29, 2016, Craighead finally reported the sexual harassment, in response to which Tally instructed Craighead to notify Ameri-Force. (*Id.*, ¶¶ 22-23.) When Craighead promptly followed this instruction, Ameri-Force's branch manager informed him that Ameri-Force "would address the harassment with Austal." (*Id.*, ¶ 24.) Later that afternoon, Austal notified Ameri-Force that Austal "had terminated Plaintiff's service" and provided no reason for doing so. (*Id.*, ¶¶ 26-27.) Ameri-Force did not request that Austal take any further action. (*Id.*, ¶ 29.) Craighead was "unable to find a position for over six months after being terminated from Austal." (*Id.*, ¶ 30.)

On the strength of these factual allegations, the Complaint purports to set forth seven causes of action against defendants. In "Count One and Two," Craighead asserts a claim for "Quid Pro Quo and Hostile Work Environment" under Title VII for what he says are "the actions of Austal Supervisors" Fore and Tally. (*Id.*, ¶ 32.) As pleaded, Counts One and Two proceed from the theory that Craighead "was being subjected to repeated sexual harassment" by Fore, and that "Defendants are liable for such misconducted [*sic*] and failed to take effective remedial

---

"Plaintiff describes the defendants with enough specificity to determine their identities"). Craighead properly concedes both the general rule and the inapplicability of the exception. (Doc. 26, at 14.) Accordingly, plaintiff's claims against Fictitious Defendants A, B, C, D, E, and F are **dismissed**.

measures to prevent such unlawful behavior by Fore." (*Id.*, ¶ 34.) Count Three is styled as a claim for retaliation under Title VII, alleging that "[t]here existed an employer-employee relationship between Plaintiff and Defendants" and that after Craighead complained about Fore's conduct, he "was subjected to intentional retaliation by Defendants. Plaintiff was terminated as a result of his complaints." (*Id.*, ¶¶ 41-42.) In Count Four, Craighead brings a state-law claim for negligent/wanton hiring, training, supervision and retention solely against Austal (not Ameri-Force) for failing to make and enforce adequate, effective sexual harassment policies and for failure to train Fore and others on sexual harassment. (*Id.*, ¶¶ 49-50.) Meanwhile, Count Five is an Alabama claim of invasion of privacy, alleging that "Defendants invaded Plaintiff's personal and emotional sanctum by continually texting sexual explicit texts and images to Plaintiff." (*Id.*, ¶ 55.) Count Six is a state-law claim of assault and battery, predicated on the theory that "Defendants did commit assault and battery of Plaintiff by continually allowing Fore and other employees of Defendants to send sexually explicit text messages and images to Plaintiff," because Fore engaged in these acts while "acting as an agent and employee of Austal." (*Id.*, ¶¶ 61-62.) Finally, in Count Seven, Craighead asserts a state-law claim of intentional infliction of emotional distress, based on the notion that "[t]he conduct of Defendants as aforesaid, was extreme, outrageous and beyond the bounds of decency." (*Id.*, ¶ 68.)

In its Motion to Dismiss, Ameri-Force maintains that dismissal of all causes of action asserted against it is warranted under Rule 12(b)(6) for failure to state a claim upon which relief can be granted. Plaintiff opposes the Motion. For its part, Austal summarily adopts many of Ameri-Force's objections wholesale in a Motion for Judgment on the Pleadings under Rule 12(c) that rides the coattails of Ameri-Force's Motion.

**II.     Ameri-Force's Motion to Dismiss.**

   *A.     Legal Standard for Rule 12(b)(6) Motions.*

To withstand Rule 12(b)(6) scrutiny and satisfy the minimum pleading requirements of Rule 8(a), a plaintiff must plead "enough facts to state a claim to relief that is plausible on its face," so as to "nudge[] [his] claims across the line from conceivable to plausible." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570, 127 S.Ct. 1955, 167 L.Ed.2d 929 (2007). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678, 129 S.Ct. 1937, 173 L.Ed.2d 868 (2009) (citation omitted). "This necessarily

requires that a plaintiff include factual allegations for each essential element of his or her claim." *GeorgiaCarry.Org, Inc. v. Georgia*, 687 F.3d 1244, 1254 (11th Cir. 2012). Thus, minimum pleading standards "require[] more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Twombly*, 550 U.S. at 555. As the Eleventh Circuit has explained, *Twombly / Iqbal* principles demand that a complaint's allegations be "enough to raise the right to relief above the speculative level." *Speaker v. U.S. Dep't of Health and Human Services Centers for Disease Control and Prevention*, 623 F.3d 1371, 1380 (11th Cir. 2010) (citations omitted). "To survive a 12(b)(6) motion to dismiss, the complaint does not need detailed factual allegations, … but must give the defendant fair notice of what the plaintiff's claim is and the grounds upon which it rests." *Randall v. Scott*, 610 F.3d 701, 705 (11th Cir. 2010) (citations and internal quotation marks omitted). The allegations "must … state a claim for relief that is plausible – and not merely possible – on its face." *Almanza v. United Airlines, Inc.*, 851 F.3d 1060, 1066 (11th Cir. 2017).

For purposes of this analysis, the Court accepts as true all well-pleaded factual allegations in the Complaint, and draws all reasonable inferences in the plaintiff's favor. *See, e.g., Almanza*, 851 F.3d at 1066 (on review of a dismissal for failure to state a claim, "[w]e must accept the factual allegations in the complaint as true and construe them in the light most favorable to the plaintiff"); *Keating v. City of Miami*, 598 F.3d 753, 762 (11th Cir. 2010) (in reviewing Rule 12(b)(6) motion, court must "accept[] the facts alleged in the complaint as true," "draw[] all reasonable inferences in the plaintiff's favor," and "limit[] our review to the four corners of the complaint"). Notwithstanding this deference to plaintiff's pleading, it is also true that "[l]egal conclusions without adequate factual support are entitled to no assumption of truth." *Mamani v. Berzain*, 654 F.3d 1148, 1153 (11th Cir. 2011); *see also Almanza*, 851 F.3d at 1066 ("Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice.") (citation omitted).

### B. *Counts One and Two ("Quid Pro Quo and Hostile Work Environment").*[3]

---

[3] Before addressing Ameri-Force's claim-specific objections, the Court examines movants' contention that the entire Complaint must be struck down as an impermissible shotgun pleading because each count incorporates by reference all other statements in the Complaint. (Doc. 11, at 16.) A complaint's incorporation by reference in each count of all preceding paragraphs is a disfavored drafting technique; however, for better or worse, it is also an
(Continued)

As movant correctly points out, there are multiple substantial defects in the portion of Craighead's Complaint labeled "Count One and Two," which purports to assert causes of action against Ameri-Force pursuant to Title VII for both *quid pro quo* and hostile work environment. (Doc. 1, ¶¶ 31-39.)[4]

---

altogether commonplace convention in pleadings filed in federal court. Typically, this practice stems from litigants endeavoring to plead their claims as broadly as possible so as to avoid constraining the universe of facts on which a given claim might rely. If the mere utilization of such an unwelcome-but-pervasive pleading device mandated that a complaint be jettisoned as a shotgun pleading, then precious few civil pleadings would survive. The defining defect in shotgun pleadings is not incorporation by reference *per se*, but is instead the net effect that it is "virtually impossible to know which allegations of fact are intended to support which claim(s) for relief." *Anderson v District Bd. of Trustees of Cent. Florida Community College*, 77 F.3d 364, 366 (11th Cir. 1996). After careful review of Craighead's Complaint, however, the Court concludes that it may be easily discerned which factual allegations support which claims. For that reason, the Complaint will not be dismissed as a shotgun pleading merely because of the incorporation-by-reference language. The same conclusion attaches to Ameri-Force's objection that in certain places the Complaint refers to "Defendants" generically, rather than specifying which defendant is alleged to have done what. From reviewing the Complaint as a whole, the Court finds no realistic likelihood that Ameri-Force will be confused or unable "to decipher with reasonable specificity which acts or omissions are alleged against it." (Doc. 11, at 18.) Simply put, these particular flaws are not so pervasive as to deprive Ameri-Force of adequate notice of the claims against it or the grounds upon which each claim rests; therefore, dismissal is not warranted on those grounds. *See generally United States v. Crumb*, 2016 WL 4480690, *9-10 (S.D. Ala. Aug. 24, 2016) (reaching similar conclusion as to "shotgun pleading" argument).

[4] From the outset, the Court observes that "Count One and Two" proceeds in derogation of the fact that the labels "*quid pro quo* harassment" and "hostile environment harassment" have been phased out of Title VII jurisprudence for nearly two decades, dating back to the Supreme Court's 1998 *Faragher* and *Ellerth* decisions. *See, e.g., Frederick v. Sprint/ United Management Co.*, 246 F.3d 1305, 1311 (11th Cir. 2001) ("[C]ourts should no longer use the labels '*quid pro quo*' and 'hostile environment' to analyze whether an employer should be held liable on an employee's Title VII claim concerning a supervisor's sex-based harassment. … Instead, when analyzing whether an employer should be held liable for a supervisor's harassment, courts should separate these cases into two groups: (1) harassment which culminates in a 'tangible employment action,' such as discharge, demotion or undesirable reassignment, and (2) harassment in which no adverse 'tangible employment action' is taken but which is sufficient to constructively alter an employee's working conditions."). Any amendment to Counts One and Two should take into account the proper *Faragher / Ellerth* nomenclature, rather than trading in obsolete terminology.

First, as a procedural matter, it is improper for Craighead to jumble what he calls two distinct claims together in his Complaint via a singular, undifferentiated tangle of allegations. The Complaint specifically alleges that "[t]hese are two separate claims against Defendants" (doc. 1, ¶ 32), even as it commingles them beyond individualized recognition. This is a textbook example of impermissible shotgun pleading. *See, e.g., Weiland v. Palm Beach County Sheriff's Office*, 792 F.3d 1313, 1323 (11th Cir. 2015) (describing as a type of shotgun pleading "one that commits the sin of not separating into a different count each cause of action or claim for relief").[5]

Second, although "Count One and Two" purports to be advancing, *inter alia*, a *quid pro quo* theory of liability, the Complaint as pleaded is devoid of factual allegations giving rise to a plausible claim for relief on such a theory. After all, "*quid pro quo* harassment" occurs "when an employee's expressed terms of employment, such as salary or continued employment, are conditioned upon compliance with the employer's sexual demands." *Mendoza v. Borden, Inc.*, 195 F.3d 1238, 1245 (11th Cir. 1999); *see also Smiley v. Jekyll Island State Park Authority*, 12 F. Supp.2d 1377, 1380 (S.D. Ga. 1998) ("*Quid pro quo* sexual harassment involves a supervisor's extortion of sexual favors from an employee by offering or threatening job benefits."). A careful reading of the Complaint does not reveal any facts suggesting that Fore made sexual demands or extorted sexual favors from Craighead, much less that Fore threatened Craighead's continued employment or job benefits unless he acceded to such demands.[6]

---

[5] *See also Cesnik v. Edgewood Baptist Church*, 88 F.3d 902, 905 (11th Cir. 1996) (criticizing complaint "framed in complete disregard of the principle that separate, discrete causes of action should be plead in separate counts"); *Anderson*, 77 F.3d at 366 (explaining that plaintiff must "present each claim for relief in a separate count, as required by Rule 10(b), and with such clarity and precision that the defendant will be able to discern what the plaintiff is claiming and to frame a responsive pleading") (footnote omitted); *see generally* Rule 10(b), Fed.R.Civ.P. ("If doing so would promote clarity, each claim founded on a separate transaction or occurrence … must be stated in a separate count ….").

[6] In his Response, Craighead posits that the well-pleaded allegations of the Complaint "demonstrate that he was fearful that if he did not go along with Fore's sexual demands that he would lose his job or suffer an adverse employment action." (Doc. 26, at 13.) Contrary to this assertion, no factual allegations plausibly supporting any such inference appear in the Complaint as pleaded.

Third, it is striking that Counts One and Two omit any references or plausible connections to defendant Ameri-Force. The alleged harasser, Brian Fore, is identified as an Austal employee, not an Ameri-Force employee. The same goes for Richard Tally, the Austal supervisor to whom Craighead reported the alleged harassment mere hours before Austal terminated his employment. Nothing in Counts One and Two appears to implicate Ameri-Force or to specify what Ameri-Force did or omitted to do that could plausibly give rise to Title VII liability for the alleged sexual harassment perpetrated by an <u>Austal</u> supervisor.[7]

---

[7] Craighead's Response advances the notion that Ameri-Force is liable on Counts One and Two under a "joint employer" theory. Of course, the Eleventh Circuit has "recognized that multiple entities can serve as 'joint employers' for Title VII purposes." *Scott v. Sarasota Doctors Hospital, Inc.*, 688 Fed.Appx. 878, 886 (11th Cir. June 8, 2017). "The test for determining whether two entities acted as joint employers is relatively straightforward: The basis of the finding is simply that one employer while contracting in good faith with an otherwise independent company, has retained for itself sufficient control of the terms and conditions of employment of the employees who are employed by the other employer. Thus the joint employer concept recognizes that the business entities involved are in fact separate but that they share or co-determine those matters governing the <u>essential</u> terms and conditions of employment." *Peppers v. Cobb County, Georgia*, 835 F.3d 1289, 1300 (11th Cir. 2016) (citations omitted). As pleaded, Craighead's Complaint does not raise a plausible claim of "joint employer" status as to Ameri-Force. The Complaint's unsupported legal conclusion that "[t]here existed an employer-employee relationship between Plaintiff and Defendants" (doc. 1, ¶ 41) is not properly credited for Rule 12(b)(6) purposes. And nowhere in the Complaint does Craighead plead specific facts tending to show that Ameri-Force retained any control over the essential terms and conditions of Craighead's employment following his placement at Austal. There is no indication, for example, that Ameri-Force had any input into Austal's termination decision, played any role in investigating Craighead's sexual harassment complaint, or maintained control over which shifts Craighead worked, which supervisor he reported to, or the like. Mere shadowy allegations that an Ameri-Force manager told Craighead that Ameri-Force "would address the harassment with Austal" (doc. 1, ¶ 24) or that Craighead asked Ameri-Force to "call Austal to see if Plaintiff could be transferred to work under a different supervisor" (*id.*, ¶ 25) are simply too flimsy and threadbare to support a plausible inference of joint control by Ameri-Force in determining the essential terms and conditions of Craighead's employment at Austal. And Craighead's suggestions in his brief that Ameri-Force (i) "was involved in the decision to terminate Craighead" (doc. 25, at 7); (ii) gave "extensive direction … to … Austal personnel about Craigheads' [*sic*] job placement, duties and type of work" (*id.* at 9); and (iii) "terminated him, and refused to provide him any further job placement opportunities" (*id.* at 12) are all devoid of support in the facts actually pleaded in the Complaint. In its current form, then, the Complaint lacks sufficient allegations to maintain a plausible claim of Title VII liability against Ameri-Force on a "joint employer" theory.

The bottom line is this: The *Twombly/Iqbal* pleading standard exists in order to ensure that defendants are given "fair notice of what the plaintiff's claim is and the grounds upon which it rests." *Randall*, 610 F.3d at 705 (11th Cir. 2010); *see also Weiland*, 792 F.3d at 1323 (pleading requirements exist "to give the defendants adequate notice of the claims against them and the grounds upon which each claim rests"). In Counts One and Two, Craighead has failed to meet that pleading standard as to defendant Ameri-Force in the above-described respects.

### C. *Count Three (Title VII Retaliation).*

A similar infirmity infects Count Three, which Craighead frames as a Title VII cause of action for retaliation. The Complaint alleges that after Craighead engaged in protected activity by complaining about Fore's sexual harassment, he "was subjected to intentional retaliation by Defendants. Plaintiff was terminated as a result of his complaints." (Doc. 1, ¶ 42.) However, the Complaint omits any factual allegations that Ameri-Force ever terminated his employment or had anything to do with the termination of his employment. In briefing the Rule 12(b)(6) Motion, Craighead hastens to interject that "Collard at [Ameri-Force] and Tilly [*sic*] at Austal jointly terminated Craighead" (doc. 26, at 7), but no such allegation appears in the pleading, which simply alleges that "Austal had terminated Plaintiff's service" and "Austal chose to terminate Plaintiff at that time" without ever telling Ameri-Force why (doc. 1, ¶¶ 26-27). Likewise, Craighead's brief states that Ameri-Force engaged in unlawful retaliation by refusing to afford him other job placement opportunities (doc. 26, at 8); however, the Complaint says nothing of the sort.

In short, Count Three in its current form does not state a claim against defendant Ameri-Force upon which relief may be granted because it fails to allege that Ameri-Force did or failed to do anything in retaliation for Craighead's engaging in protected activity under Title VII.

### D. *Count Five (Invasion of Privacy).*

In Count Five of the Complaint, Craighead asserts a state-law claim against defendants for the intentional tort of invasion of privacy.[8] The Complaint elaborates on this claim by

---

[8] This is the first of three intentional torts pleaded in the Complaint, the others being found at Count Six (assault and battery) and Count Seven (intentional infliction of emotional distress). As a threshold matter, Ameri-Force posits that it cannot be held liable for those intentional torts here, as a matter of law. However, an employer may be held "liable for the intentional torts of the employee if the employer ratifies the employee's conduct." *Ex parte*
(Continued)

alleging that "Defendants invaded Plaintiff's personal and emotional sanctum by continually texting sexual explicit texts and images to Plaintiff both on work time and personal time after repeatedly being told to stop." (Doc. 1, ¶ 55.) In its Motion to Dismiss, Ameri-Force challenges whether the Complaint "sufficiently plead[s] an intrusion on seclusion invasion of privacy claim" under Alabama law. (Doc. 11, at 12.)

"To succeed on a claim alleging invasion of privacy relating to sexual harassment, a plaintiff must show: (1) that the matters intruded into are of a private nature; and (2) that the intrusion would be so offensive or objectionable that a reasonable person subjected to it would experience outrage, mental suffering, shame, or humiliation." *Ex parte Atmore Community Hosp.*, 719 So.2d 1190, 1194 (Ala. 1998) (observing that "extensive inquiries into one's sex life or looking up one's skirt may constitute an invasion of privacy"); *see also Phillips v. Smalley Maintenance Services, Inc.*, 435 So.2d 705, 711 (Ala. 1983) (finding cognizable claim for invasion of privacy based on "improper inquiries into her personal sexual proclivities," where plaintiff "was subjected to intrusive demands and threats, including an inquiry as to the nature of sex between her and her husband," and harasser repeatedly "asked her whether she had ever engaged in oral sex"). In this context, courts have required "an offensive or objectionable *prying or intrusion* into the plaintiffs' private affairs or concerns," that is, some form of "examination or invasion of [plaintiff]'s private concerns." *Stancombe v. New Process Steel LP*, 652 Fed.Appx. 729, 738 (11th Cir. June 2, 2016) (citations omitted); *see also Cunningham v. Dabbs*, 703 So.2d 979, 982 (Ala.Civ.App. 1997) (cognizable claim for invasion or privacy exists where harasser

---

*Atmore Community Hosp.*, 719 So.2d 1190, 1195 (Ala. 1998); *see also Dolgencorp, LLC v. Spence*, 224 So.3d 173, 180 (Ala. 2016) (same). Ratification occurs where "(1) the employer has actual knowledge of the tortious conduct; (2) based on his knowledge, the employer knew the conduct constituted a tort; and (3) the employer failed to take adequate steps to remedy the situation." *Ex parte Atmore*, 719 So.3d at 1195. In the sexual harassment context, the Alabama Supreme Court has opined that "[a]n employer's failure to stop the tortious conduct after it learns of the conduct will support an inference that the employer tolerated the conduct," and thereby support an inference of ratification. *Potts v. BE & K Const. Co.*, 604 So.2d 398, 400 (Ala. 1992). Craighead's Complaint, viewed in the light most favorable to plaintiff, adequately alleges that defendants failed to take adequate steps to remedy the situation after becoming aware of Fore's conduct; therefore, a plausible ratification theory is set forth in plaintiff's pleading, and dismissal of Counts Five through Seven for lack of a viable basis for vicarious liability is not appropriate at this time.

engaged in "sexual propositions and inappropriate physical contact," such that a jury could find he "unreasonably intruded into Cunningham's private affairs").

Applying these principles to Craighead's Complaint, the Court agrees with Ameri-Force that Count Five falls short of alleging a plausible invasion-of-privacy claim at this time. Again, the case law emphasizes the necessity of an offensive or objectionable prying or intrusion into private affairs, such as extensive inquiries about one's sex life or inappropriate physical contact. In its current form, Count Five alleges no such prying or intrusion, only that Fore sent offensive images "referencing oral sex and the size of Plaintiff's genitalia" and made unspecified comments "regarding oral sex, the Plaintiff's sexual orientation and male genitalia." What is missing from these allegations are any facts showing prying or intrusion into plaintiff's private affairs, as opposed to merely showing him offensive images and making offensive comments. The decisional authority summarized above reflects that this distinction matters under Alabama law in order for an invasion of privacy claim based on sexual harassment to be viable. Perhaps this deficiency may be remedied by Craighead pleading greater specificity about the purported harassment, as opposed to general descriptions of the offensive comments and images; however, in its current form, Count Five fails to state a plausible claim for invasion of privacy.

### E. *Count Six (Assault and Battery).*

Count Six of Craighead's Complaint is a state-law claim for assault and battery. In his pleading, plaintiff alleges that defendants committed this tort by "continually allowing Fore and other employees of Defendants to send sexually explicit text messages and images to Plaintiff." (Doc. 1, ¶ 61.) Under well-settled Alabama law, however, mere transmission of sexually explicit messages and images does not and cannot constitute assault and battery. To the contrary, "[t]he plaintiff in an action alleging assault and battery must prove (1) that the defendant touched the plaintiff; (2) that the defendant intended to touch the plaintiff; and (3) that the touching was conducted in a harmful or offensive manner." *Dolgencorp, LLC v. Spence*, 224 So.3d 173, 180 (Ala. 2016) (citations omitted); *see also Walker v. City of Huntsville*, 62 So.3d 474 (Ala. 2010) (same). The Complaint does not allege – and Craighead by all appearances cannot allege in good faith – that a touching occurred. When confronted with this defect in Ameri-Force's Motion to Dismiss, plaintiff does not even attempt to respond or articulate any factual or legal basis on which his allegations might give rise to a colorable claim of assault and battery under Alabama law. Accordingly, Count Six is **dismissed** for failure to state a claim.

### F. *Count Seven (Intentional Infliction of Emotional Distress).*

Finally, Ameri-Force moves for dismissal of Count Seven, in which Craighead raises a claim of intentional infliction of emotional distress, otherwise known as the tort of outrage. Alabama courts have recognized outrage claims in cases involving sexual harassment, but only "in the most egregious circumstances." *Kilgore v. Thompson & Brock Management, Inc.*, 93 F.3d 752, 755 (11th Cir. 1996) (citation omitted); *see also Henry v. Georgia-Pacific Corp.*, 730 So.2d 119, 121 (Ala. 1998) ("[e]gregious sexual harassment can amount to the tort of outrage," such as where business-related counselor asked plaintiff intimate details about sex life, questioned her about orgasms, and asked her to take off her shirt, and employer forced plaintiff to continue sessions or lose her job); *Busby v. Truswal Systems Corp.*, 551 So.2d 322, 327-28 (Ala. 1989) (opining that "several requests by an employer for a female employee to have dinner with him, to kiss him, or to have an affair with him would not support a claim for outrageous conduct"); *Stancombe*, 652 Fed.Appx. at 739 ("No doubt the act of grabbing another's head and, while fully clothed, making pelvic thrusts in his face is boorish, vulgar, and completely unacceptable, but we cannot say that this one-time incident was so outrageous as to satisfy the requisite element of the tort of outrage.").[9] They have required not only that the harassing conduct itself be outrageous, but also that the employer have knowledge of the specific details of that conduct. *See Henry*, 730 So.2d at 121 (drawing a distinction between case in which plaintiff told employer "exactly what had occurred" and one in which "plaintiffs told management in general terms of the harassment, but did not initially give the details or the full extent of that conduct").

---

[9] *See also Ferrari v. D.R. Horton, Inc.-Birmingham*, 2017 WL 467472, *10-11 (N.D. Ala. Feb. 3, 2017) (dismissing outrage claim for failure to meet "severity" element, where conduct included solicitation of plaintiff for extramarital affair, in-depth discussions about oral sex and other sexual preferences, and comments about sexual habits and private parts); *Folsom v. McAbee Const., Inc.*, 2012 WL 3527876, *15 (N.D. Ala. June 6, 2012) (finding triable issue as to outrage claim where plaintiff alleged that harasser "constantly subjected plaintiff to requests for sexual favors, showed her photographs of genitals, described sexual relations he had engaged in with others and physically assaulted her by placing a hammer between her legs and then claiming it was equal in size to his penis"); *Leatherwood v. Mobile Housing Bd.*, 2010 WL 3039598, *7 (S.D. Ala. Aug. 4, 2010) (dismissing outrage claim for lack of sufficiently egregious conduct, where harasser "asked plaintiff to have sex with him in exchange for money" and "made comments that were arguably sexual [in] nature on three other occasions").

Review of the foregoing authorities demonstrates the necessity of pleading specific details as to both the harassing conduct and the information furnished to the employer. Without such an in-depth description, it is impossible to evaluate whether Craighead has pleaded a cognizable claim for intentional infliction of emotional distress. In its current formulation, Count Seven lacks sufficient details to enable the Court to evaluate whether a plausible outrage claim is being asserted, as to both the outrageousness *vel non* of Fore's conduct and the knowledge *vel non* of Ameri-Force. The Complaint describes the allegedly harassing images and comments in only the most general terms (*i.e.*, "explicit comments … regarding oral sex, the Plaintiff's sexual orientation and male genitalia"), and is silent as to the severity of such harassment except to describe it generically as "vulgar and demeaning." (Doc. 1, ¶¶ 19, 37.) Alabama's tort of outrage does not reach "mere insults, indignities, threats [or] annoyances." *McIsaac v. WZEW-FM Corp., In.*, 495 So.2d 649, 651 (Ala. 1986) (citation omitted). Nor does it create a cause of action in tort for conduct that is simply "boorish, vulgar, and completely unacceptable." *Stancombe*, 652 Fed.Appx. at 739. Without more detail, it cannot be said that Count Seven raises a plausible claim of outrage based on egregious sexual harassment. Likewise, the Complaint as pleaded provides no information as to the level of detail utilized by Craighead in reporting the harassment to his employer(s). At best, the Complaint alleges that "Plaintiff informed Tally of the harassment he was experiencing" and "met with" Ameri-Force's branch manager about the subject (doc. 1, ¶¶ 22, 24), without elaborating on what exactly he told them at that time.

In light of these shortcomings in the manner in which Count Seven was pleaded, the Court cannot find on this record that Craighead has raised a plausible claim for the tort of outrage under Alabama law. And in his Response to Ameri-Force's Rule 12(b)(6) Motion, Craighead presents no argument or authority in defense of Count Seven.

### III. Austal's Motion for Judgment on the Pleadings.

During the pendency of briefing on defendant Ameri-Force's Motion to Dismiss, defendant Austal USA, LLC, which had previously filed an Answer (doc. 12), filed a Motion for Judgment on the Pleadings (doc. 25) pursuant to Rule 12(c), Fed.R.Civ.P.[10] Austal's Motion is

---

[10] Rule 12(c) motions are evaluated using the same legal standards as their Rule 12(b) counterparts. *See, e.g., HSBC Realty Credit Corp. (USA) v. O'Neill*, 745 F.3d 564, 570 (1st (Continued)

effectively a "me too" filing. It presents no new or different grounds for dismissal of Craighead's Complaint, but simply adopts (with minimal elaboration) a half-dozen of Ameri-Force's arguments "to the extent such arguments are equally applicable to Austal." (Doc. 25, at 1.) In presenting its Rule 12(c) Motion, Austal neither tailors nor adapts its co-defendant's contentions to fit Austal's circumstances, but merely invokes those arguments without comment insofar as they are or may be "applicable to Austal." In an abundance of caution and to ensure that all parties receive an adequate opportunity to be heard, the undersigned entered a briefing schedule specific to Austal's Motion. Briefing has now concluded.[11] Each of those six grounds for judgment on the pleadings identified by Austal will be addressed in turn.

First, Austal argues that it cannot be liable for the intentional torts alleged in Counts Five through Seven (invasion of privacy, assault and battery, outrage) of Craighead's Complaint because no adequate basis for vicarious liability has been pleaded. For the reasons previously set forth in footnote 8, *supra*, the Court rejects this argument and finds that, as applied to Austal, the Complaint sets forth a plausible pathway for vicarious liability on a ratification theory.

Second, Austal echoes Ameri-Force's contention that Count Five (invasion of privacy) is insufficiently pleaded. As discussed in section II.D., *supra*, the Court concludes that Count Five as pleaded lacks sufficient facts showing a prying or intrusion into Craighead's private affairs;

---

Cir. 2014) ("We review a Rule 12(c) dismissal like we would a Rule 12(b)(6) dismissal: *de novo*, taking as true the losing party's well-pleaded facts and seeing if they add up to a plausible claim for relief."); *Gentilello v. Rege*, 627 F.3d 540, 543-44 (5th Cir. 2010) ("We evaluate a motion under Rule 12(c) for judgment on the pleadings using the same standard as a motion to dismiss under Rule 12(b)(6) for failure to state a claim. … To avoid dismissal a plaintiff must plead sufficient facts to state a claim to relief that is plausible on its face.") (citations and internal quotation marks omitted).

[11] That briefing schedule recognized the "tagalong" nature of Austal's Motion, and for that reason instructed the parties that they "are expected to incorporate by reference specific arguments from the briefing on Ameri-Force's Motion as needed, with appropriate supplementation to tailor the analysis to Austal." (Doc. 27.) Rather than complying with this directive, Craighead filed a brief (doc. 30) that is in large part a cut-and-paste of his Response to Ameri-Force's Motion, thereby needlessly forcing the Court and opposing counsel to wade through redundant briefs in search of any nuggets that might be specific to Austal's Motion rather than a verbatim rehash of briefing on the Ameri-Force Motion.

however, plaintiff will be given an opportunity to replead the claim to include the requisite level of detail about the harassing conduct.

Third, Austal adopts Ameri-Force's assertion that the Complaint fails to allege sufficient facts to support a claim for assault and battery in Count Six. The Court agrees. As stated in section II.E., *supra*, Count Six is fatally defective as pleaded because is devoid of any facts raising a plausible inference that a harmful or offensive touching took place.

Fourth, Austal seeks judgment on the pleadings as to Count Seven (outrage) for having been insufficiently pleaded. In section II.F., *supra*, the Court explained why Count Seven in its current form does not state a plausible claim because it lacks the necessary detail to show the severity or egregiousness of the alleged harassment, or the degree to which Craighead reported Fore's misconduct to his employer(s). These conclusions apply with equal force to Count Seven as it pertains to Austal as they do to Count Seven as applied to Ameri-Force.

Fifth, Austal adopts all of Ameri-Force's "shotgun pleading" arguments. For the reasons described above, the Court finds that these arguments are well-founded insofar as Craighead's purportedly separate claims under Title VII for *quid pro quo* and hostile work environment are pleaded as a single run-on cause of action under the heading "Count One and Two." In all other respects, the "shotgun pleading" arguments as to Austal are not well taken.

Sixth, insofar as Austal reiterates Ameri-Force's objections to the Complaint's listing of fictitious defendants, those fictitious defendants have already been dismissed from this action pursuant to the Court's ruling on Ameri-Force's Rule 12(b)(6) Motion. No further ruling is necessary on behalf of Austal to excise plaintiff's fictitious-party claims from these proceedings.

## IV. Conclusion.

For all of the foregoing reasons, the Court finds that Craighead's Complaint is deficiently pleaded in multiple respects. As such, both Ameri-Force's Motion to Dismiss (doc. 11) and Austal's Motion for Judgment on the Pleadings (doc. 25) are **granted**. That said, in briefing these Motions, Craighead has consistently, repeatedly requested that he be afforded an opportunity to file an amended pleading to correct any deficiencies that the Court might find, and has proffered examples of specific factual allegations he would add to shore up such infirmities in his original Complaint. Circuit precedent and the interests of justice generally provide that a plaintiff should be given at least one chance to amend a complaint where an amended pleading might state a plausible claim for relief. *See, e.g., Bryant v. Dupree*, 252 F.3d 1161, 1163 (11th

Cir. 2001) ("Generally, where a more carefully drafted complaint might state a claim, a plaintiff must be given at least one chance to amend the complaint before the district court dismisses the action with prejudice.") (citation omitted); *Corsello v. Lincare, Inc.*, 428 F.3d 1008, 1014 (11th Cir. 2005) ("Ordinarily, a party must be given at least one opportunity to amend before the district court dismisses the complaint."). Defendants have advanced no persuasive ground for denying such an opportunity to Craighead here. Accordingly, in lieu of dismissal of the above-described causes of action, plaintiff is **ordered** to file an amended complaint that corrects the identified deficiencies by no later than **January 4, 2018**. Defendants' answers or other responsive pleadings must be filed on or before **January 18, 2018**.

DONE and ORDERED this 21st day of December, 2017.

s/ WILLIAM H. STEELE
UNITED STATES DISTRICT JUDGE